# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TURI JOSEPH, | ) | |
| | ) | No. 15 CV 66 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| OFFICER ORTIZ, | ) | |
| | ) | August 16, 2016 |
| Defendant. | ) | |

## MEMORANDUM OPINION and ORDER

Plaintiff Turi Joseph brings this action against Defendant Officer Ortiz pursuant to 42 U.S.C. § 1983. Joseph alleges in his complaint that while he was a pretrial detainee in the Cook County Jail ("CCJ"), Ortiz was responsible for his placement in disciplinary segregation without adequate due process. Before this court is Ortiz's motion for summary judgment. For the following reasons, Ortiz's motion is granted, and Joseph is hereby notified of the court's intention to enter summary judgment in favor of Ortiz to the extent Joseph may also be asserting a malicious prosecution claim:

## Procedural History

Joseph, proceeding *pro se*, filed his complaint in January 2015 naming the Cook County Sheriff's Office as a defendant in addition to Ortiz. (R. 1.) However, the court dismissed the Cook County Sheriff's Office as a non-suable entity in June 2015, leaving Ortiz as the sole remaining defendant. (R. 19.) After the parties consented to this court's jurisdiction, (R. 18); *see* 28 U.S.C. § 636(c), the parties

proceeded with discovery, (see R. 26; R. 30; R. 40-2). Ortiz filed the current motion for summary judgment on April 4, 2016. (R. 42.) Joseph filed what the court deemed to be his opposition to Ortiz's motion on April 22, 2016, (R. 45), and Ortiz filed his reply thereto on June 3, 2016, (R. 52).

## Local Rule 56.1

The court notes that in many instances, the parties' Local Rule ("L.R.") 56.1 statements and responses do not conform to L.R. 56.1's requirements. Local Rule 56.1(a)(3) requires that the party moving for summary judgment provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." L.R. 56.1(a)(3). The statement should be comprised of short, numbered paragraphs that are supported by citations to admissible evidence. *See Smith v. Lamz*, 321 F.3d 680, 682 (7th Cir. 2003). However, Ortiz's statement of facts contains several erroneous citations, including cites to incorrect page and line numbers in Joseph's deposition transcript. (See, e.g., R. 40, Def.'s Facts ¶¶ 3, 6, 11, 13, 19, 30.)

Local Rule 56.1 "is designed, in part, to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (internal quotations omitted). Ortiz should have ensured that his citations to the record were accurate, especially given the length at which his reply brief criticizes Joseph's failure to comply with local rules. (See R. 52, Def.'s

Reply at 1-4.) While the court is entitled to disregard any statements and responses that do not comply with L.R. 56.1, *see Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008); *Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 809-10 (7th Cir. 2005), it will accept most of Ortiz's facts because they are ultimately supported by the record.

As for Joseph's L.R. 56.1 submissions, Ortiz provided a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" to explain L.R. 56.1's requirements to Joseph. (R. 41.) The notice informed Joseph that if he wanted to dispute any of Ortiz's facts or submit a statement of his own, he should refer to documents and declarations that support his factual allegations. (Id.) It also cautioned Joseph that this court would deem Ortiz's factual contentions admitted if he failed to follow the procedures delineated in L.R. 56.1. (Id.) Under L.R. 56.1(b), Joseph, as the non-moving party, was required to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and any other supporting materials relied upon" and "a statement . . . of any additional facts that require the denial of summary judgment, including references to the affidavit, parts of the record, and any other supporting materials relied upon." L.R. 56.1(b)(3)(B), (C). *Pro se* plaintiffs are expected to comply with these procedural rules. *See Cady v. Sheahan,* 467 F.3d 1057, 1061 (7th Cir. 2006); *Koszola v. Bd. of Educ. of the City of Chi.,* 385 F.3d 1104, 1108 (7th Cir. 2004).

Despite these requirements, Joseph did not file a proper response to Ortiz's statement of facts. For example, he erroneously included factual or legal arguments in several of his purported responses. (See, e.g., R. 46, Pl.'s Resp. ¶¶ 6-13, 16, 20, 26-31); *see Cady*, 467 F.3d at 1060 (finding error in a *pro se* plaintiff's L.R. 56.1 statement of facts because it "was filled with irrelevant information, legal arguments, and conjecture"). Although Joseph did attempt to admit or dispute some of Ortiz's facts, he also added information that should have been included in a separate statement of additional facts pursuant to L.R. 56.1(b)(3)(c). (See, e.g., R. 46, Pl.'s Resp. ¶¶ 4-18, 20-32); *see McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir. 1998). In several instances it is unclear whether Joseph is admitting or disputing Ortiz's asserted facts. (See, e.g., R. 46, Pl.'s Resp. ¶¶ 12, 21-22, 28, 30-31); *see McGuire*, 152 F.3d at 675. Additionally, some of Joseph's paragraphs contain incorrect citations or fail to cite to the record. (See, e.g., R. 46, Pl.'s Resp. ¶¶ 14, 27, 29); *see Cihon v. Exelon Generation Co., LLC*, 401 F.3d 803, 808 (7th Cir. 2005) (plaintiff's response included facts without citations and cited to portions of the record that failed to support his denials in violation of L.R. 56.1).

However, this court treats and construes the submissions of *pro se* litigants generously and liberally. *See Greer v. Bd. of Educ. of City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001); *see also Haines v. Kerner*, 404 U.S. 519, 596 (1972) (stating that the allegations of a *pro se* complaint are held to less strict standards than pleadings drafted by lawyers). This liberal construction is designed to "give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise

4

understandable." *Hudson v. McHugh,* 148 F.3d 859, 864 (7th Cir. 1998). The majority of deficiencies in Joseph's response to Ortiz's statement of facts are technicalities and do not prevent this court from understanding and evaluating his response, so this court will consider those facts that are adequately supported by the record. Furthermore, the court views the facts in the light most favorable to Joseph. *See Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 937 (7th Cir. 2003).

**Facts**

Joseph was a pre-trial detainee in the custody of the CCJ from April 2014 to March 2015. (R. 40, Def.'s Facts ¶ 1; R. 46, Pl.'s Resp. ¶ 1.) During that time, Ortiz worked as a correctional officer at the CCJ. (See R. 40-1, Compl. at 2.) On October 22, 2014, Ortiz instructed Joseph to remove a cloth from his head, which Joseph acknowledges was the property of the CCJ. (See R. 40, Def.'s Facts ¶¶ 3-4; R. 46, Pl.'s Resp. ¶ 4.) Both parties agree that Joseph initially removed the cloth after Ortiz directed him to do so. (R. 40, Def.'s Facts ¶ 5; R. 46, Pl.'s Resp. ¶ 5.) However, according to Ortiz, Joseph only briefly removed the cloth before putting it back on his head so he could work out. (R. 40, Def.'s Facts ¶ 5.) Joseph contends that he never put the cloth back on his head and instead wrapped a shirt around his hair so he could exercise. (R. 46, Pl.'s Resp. ¶ 5.) He testified at his deposition that the CCJ handbook only prohibits detainees from wearing head attire in the facility's dayroom, and he asserts that he was never in the dayroom while wearing either the cloth or the shirt. (R. 40-2, Pl.'s Dep. at 13:5-24, 32:13-22.) While the tier's layout is unclear, Joseph testified that he was in a bunk bed area that was separated from

5

the dayroom by a low wall. (R. 40-2, Pl.'s Dep. at 11:13-15, 13:15-20, 14:6-14.) After Joseph covered his head, Ortiz ordered all detainees out of the dayroom. (R. 40, Def.'s Facts ¶ 6.)

Jywanza Thompkins, one of the detainees in the dayroom, approached Ortiz and asked why they were being directed to leave. (R. 40-2, Pl.'s Dep. at 12; R. 40, Def.'s Facts ¶ 7.) Thompkins stated that detainees are allowed to wear head attire when they are not in the dayroom, and eventually slammed playing cards down on a table and accused Ortiz of unfairly closing the dayroom. (R. 40, Def.'s Facts ¶¶ 7-8.) Ortiz and another officer then moved Thompkins to another part of the dayroom to handcuff him. (See id. ¶¶ 9-10; R. 40-2, Pl.'s Dep. at 13:14-17.) According to Ortiz, Joseph approached the area where Thompkins was being handcuffed. (R. 40, Def.'s Facts ¶ 10.) Joseph testified that although he stepped into view to speak to Ortiz, he never left the bunk area or entered the dayroom. (R. 46, Pl.'s Resp. ¶ 10; R. 40-2, Pl.'s Dep. at 13:17-20.) Joseph then told Ortiz that Thompkins was right about the rules regarding head attire. (R. 40, Def.'s Facts ¶ 10; R. 46, Pl.'s Resp. ¶ 10.)

Ortiz ordered Joseph to step back while Thompkins was being handcuffed. (R. 40, Def.'s Facts ¶ 11.) According to Ortiz, Joseph continued to approach them and eventually placed himself in front of Thompkins. (Id. ¶ 12.) But Joseph asserts that although he did come closer to them, he still never entered the dayroom and never placed himself between Thompkins and the correctional officers. (R. 46, Pl.'s Resp. ¶ 12.) At this point a third officer directed Joseph "to back off" so that they could investigate the situation. (R. 40, Def.'s Facts ¶ 13.) This third officer ordered

6

Joseph to sit down, but Joseph did not do so because he was instructed to sit on someone else's bed and felt uncomfortable complying. (Id. ¶ 14.) Joseph remained in the area until Thompkins was taken off the tier. (Id. ¶ 15.) After the officers and a sergeant discussed the incident, Joseph was also handcuffed and removed from the tier. (Id. ¶ 16.) He was then placed in a holding cell and eventually moved to segregation. (Id. ¶¶ 18-19.)

Representatives from the CCJ hearing board visited Joseph within a couple days of being placed in segregation. (Id. ¶ 21.) The representatives explained that he was in disciplinary segregation for disobeying a direct order. (Id.) According to Joseph, they also told him that he was being disciplined because he damaged or altered CCJ property by wrapping his hair with a CCJ cloth. (See R. 46, Pl.'s Resp. ¶ 21.) The representatives asked Joseph for his version of the incident, a brief summary of which was included in the hearing board's findings. (See R. 40, Def.'s Facts ¶ 22.) Joseph testified that a sergeant also conducted a videotaped interview of Joseph immediately after the incident. (R. 40-2, Pl.'s Dep. at 23:13-14.) The hearing board's written findings of fact and decision indicate that it found Joseph guilty of defying an officer's orders to return to his bunk. (R. 40-2, Pl.'s Dep., Ex. 1.) Ortiz's written statement about the incident makes no mention of the cloth on Joseph's head and only states that Joseph refused to sit on his bunk despite being ordered to do so. (R. 46, Pl.'s Resp., Ex. I.)

Joseph spent three weeks in disciplinary segregation. (R. 40, Def.'s Facts ¶ 26.) According to Joseph, the hearing board representatives instructed him to

write a statement more fully explaining his version of events, but when he tried to give that written statement to a counselor, she did not accept it. (R. 46, Pl.'s Resp. ¶ 26.) Joseph filed two grievances–one in October 2014 and the other in November 2014–requesting a full investigation into the incident. (Id.; see id., Exs. E & F.) The hearing board responded to Joseph's grievances in October and November 2014, reiterating the factual bases of the charges against him and stating that its decision was pending a completed psychological review. (See id., Ex. G & H.)

While Joseph spoke with Ortiz on several occasions after he was placed in disciplinary segregation, they never discussed the subject incident. (R. 40, Def.'s Facts ¶ 27.) Joseph has no evidence to show that Ortiz played any role in the hearing board's decision after Ortiz filed the disciplinary report or to show that he prevented the hearing board from following required procedures. (Id. ¶¶ 28-30.)

## Analysis

Before reaching the arguments in Ortiz's motion, in the interest of liberally construing Joseph's submissions as a *pro se* plaintiff, the court must address some of the assertions Joseph includes in his response to Ortiz's statement of facts. *See Greer,* 267 F.3d at 727; *Haines*, 404 U.S. at 596. In paragraphs that appear to stand separate and apart from his other responses to Ortiz's statements of fact, Joseph claims that Ortiz arrested him "for no reason" and "lied about the situation," thereby causing the constitutional deprivation he alleges in his complaint. (R. 46, Pl.'s Resp. ¶¶ 29-31.) Joseph goes on to assert that Ortiz is liable for "unlawful arrest and the damages involved [because he] wrote me up for disobeying orders[.]"

8

(Id. ¶ 31.) It appears from these assertions, which are not included in his complaint, that Joseph believes he has a malicious prosecution claim based on alleged fabrications by Ortiz. In light of the court's obligation to construe *pro se* submissions leniently, the court will therefore address not only Joseph's due process claim, but will also address his potential malicious prosecution claim.

**A. Due Process Claim**

Summary judgment is appropriate where the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In order to prevail on his claim against Ortiz under 42 U.S.C. § 1983 that he was constitutionally deprived of a fair hearing or investigation, Joseph must show that: (1) he held a constitutionally protected right; (2) he was deprived of that right in violation of the Constitution; (3) Ortiz intentionally caused the deprivation; and (4) Ortiz acted under color of state law. *See Cruz v. Safford*, 579 F.3d 840, 843-844

9

(7th Cir. 2009); *Schertz v. Waupaca* County, 875 F.2d 578, 581 (7th Cir. 1989) (citation omitted). Ortiz argues in his motion that in order to be held liable under Section 1983, he must have been personally involved in the constitutional deprivation that Joseph is alleging. (R. 44, Def.'s Mem. at 1.) An abundance of case law supports Ortiz's argument. *See, e.g., Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) ("Section 1983 creates liability only for a defendant's personal acts or decisions."); *Allen v. Wine*, 297 Fed. Appx. 524, 531 (7th Cir. 2008) ("To hold a person liable under § 1983, however, the plaintiff must prove that the defendant was personally involved in the deprivation of a constitutional right.") (quoting *Johnson v. Snyder,* 444 F.3d 579, 583-84 (7th Cir. 2006) (internal quotations omitted)); *Doyle v. Camelot Care Ctrs., Inc.,* 305 F.3d 603, 614 (7th Cir. 2002) ("It is well-established that a plaintiff only may bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation.") (citing *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001)).

Here, there is no evidence that Ortiz was personally involved in how the dayroom incident was investigated, or how the hearing board reached its decision. In fact, Joseph admitted during his deposition that beyond the fact that Ortiz reported the initial disciplinary violation, he did not know if Ortiz had any involvement in the hearing board's decision-making process. (R. 40-2, Pl.'s Dep. at 26:3-22.) He even testified that he believed the hearing process was "out of Officer Ortiz's hands," that it was "not his job" to be involved in the disciplinary board hearing, and that after reporting the violation, Ortiz's task was "complete" and it

was "up to the hearing board to decide." (Id. at 26:18-27:14.) Furthermore, Joseph and Ortiz never talked about the status of Joseph's charges after the incident. (R. 40, Def.'s Facts ¶ 27.) The only individuals with whom Joseph discussed the proceedings were representatives from the hearing board and the sergeant who interviewed him immediately after the incident. (Id. ¶¶ 21, 25.) Because Joseph's complaint alleges that he suffered a constitutional deprivation arising from the outcome of the hearing and supposed failures by the hearing board to follow proper procedures, the fact that Ortiz had no direct involvement in the hearing process or in deciding its outcome beyond filing his initial report is fatal to Joseph's due process claim.

Even if Joseph had brought this action against the hearing board officials and representatives who were personally involved in the decision-making process, it is unclear whether Joseph's placement in disciplinary segregation constituted a sufficient deprivation of liberty to entitle him to due process of law. In cases involving convicted prisoners, a protected liberty interest arises when prisoners are subjected to a policy that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkinson,* 545 U.S. at 221-23 (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995) (internal quotations omitted)). However, the Seventh Circuit has recognized that while being placed in segregation may be too trivial a deprivation to trigger the duty of due process for convicted inmates, some cases consider any nontrivial punishment of a pre-trial detainee a sufficient deprivation of liberty to give rise to due process protection. *See Holly v.*

*Wollfolk*, 415 F.3d 678, 679-80 (7th Cir. 2005) (collecting cases). Here, the record is vague regarding the specific conditions of Joseph's confinement. Joseph was unable to take many of his possessions into segregation, (R. 40, Def.'s Facts ¶ 20), but he testified at his deposition that he was allowed access to a shower and had some human contact, (see R. 40-2, Pl.'s Dep. at 25:7-19). When the toilet in his cell became clogged, the CCJ officials moved Joseph to another cell. (Id. at 24:15-21.) He testified that he did not enjoy the same level of freedom as the general population, such as access to books, phones, TV, and more space, (see id. at 27:24-28:7), and that he was on the same tier as detainees with mental health issues, (see id. at 28:12-13). It is unclear whether he had access to other privileges.

Drawing all reasonable inferences in Joseph's favor and assuming that his time in segregation implicated a protected liberty interest, it is still unclear whether he would be entitled to more due process than the process he received. The Seventh Circuit has held that a prisoner "facing transfer to a more-restrictive prison setting is not entitled to the same level of process as an inmate facing a longer prison stay through the loss of good time." *Gibson v. Pollard*, 610 Fed. Appx. 571, 573 (7th Cir. 2015). For prisoners facing transfer to a more-restrictive setting, such as disciplinary segregation, only "informal, *nonadversarial* procedures" are required. *Id*. (emphasis in original) (citing *Wilkinson v. Austin*, 545 U.S. 209, 228-29 (2005); *Westefer v. Snyder*, 422 F.3d 570, 590 (7th Cir. 2005)). More specifically, a pre-trial detainee must receive notice and an opportunity to be heard when placed in segregation as a punishment for a disciplinary infraction. *See Higgs v. Carver*, 286

F.3d 437, 438 (7th Cir. 2002). In this context, the CCJ was only constitutionally required to notify Joseph of the rationale for placing him in disciplinary segregation and provide him with an opportunity to present his version of the incident. *See id.; see also Gibson*, 610 Fed. Appx. at 574 (citations omitted).

The hearing board adhered to these requirements, although perhaps not to the extent Joseph would have preferred. According to Joseph, representatives from the hearing board visited Joseph in segregation "the next day" after the incident and told him that he had been transferred there because he refused verbal orders to return to his bunk. (See R. 46, Pl.'s Resp. ¶ 21; R. 40, Def.'s Facts ¶ 21); *see also Holly*, 415 F.3d at 680-81 (finding sufficient due process where pre-trial detainee received an opportunity to be heard within 48 hours of being placed in segregation). During this visit, the representatives also noted Joseph's version of the incident, a summary of which was included on the form announcing the hearing board's decision. (R. 40, Def.'s Facts ¶ 22.) A sergeant also interviewed Joseph immediately after the incident and recorded the same. (Id. ¶ 25; see also R. 46, Pl.'s Resp. ¶ 25.) Furthermore, the hearing board responded—albeit briefly—to Joseph's grievances, which included a detailed account of his version of the incident. (See R. 46, Pl.'s Resp., Exs. E, F, G, & H.) Finally, Joseph informed the hearing board that video footage of the incident would support his version of the incident, (see id., Ex. F), and the hearing board indicated in its findings of fact that it had reviewed video footage in reaching its decision, (R. 40-2, Pl.'s Dep., Ex. 1). Accordingly, the uncontested evidence indicates that the hearing board provided Joseph with

adequate due process. *See Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006) (in the prison discipline context, due process requires that the prisoner receive advance notice of the charges, the chance to present testimony and documentary evidence, and a written explanation, supported by at least some evidence in the record, for any disciplinary action taken).

As stated above, to prevail on his Section 1983 claim that he was deprived of his constitutional right to a fair hearing or investigation, Joseph has to at least show that he was deprived of a constitutionally protected right and that Ortiz intentionally deprived him of that right. *See Schertz*, 875 F.2d at 581. But even when the record is viewed in the light most favorable to Joseph, the evidence does not show that Ortiz was involved in the hearing process which led to his disciplinary segregation, *see, e.g., Vinning-El*, 657 F.3d at 592, nor does the evidence show that he was entitled to more due process than the process he received, *see Gibson*, 610 Fed. Appx. at 573. Accordingly, Ortiz's motion for summary judgment on Joseph's claim regarding the hearing board process is granted.

**B.     Malicious Prosecution Claim**

Having dispensed with the due process claim expressly contained in Joseph's complaint, the court turns next to the assertions in Joseph's response to Ortiz's statement of facts, which this court construes liberally as a malicious prosecution claim. Joseph contends that Ortiz charged him with a disciplinary violation "for no reason" and "lied about the situation," thereby causing his placement in segregation. (R. 46, Pl.'s Resp. ¶¶ 29-31.) To the extent Joseph is alleging a

malicious prosecution claim, the Seventh Circuit has stated that federal court is "rarely the appropriate forum" for such a claim because if state law provides an adequate remedy for his malicious prosecution claim, then Joseph cannot pursue his claim in federal court.[1] *See Howlett v. Hack*, 794 F.3d 721, 727 (7th Cir. 2015) (quotation marks and citation omitted). However, Illinois law does not provide an adequate state remedy for Joseph's claim. To successfully state a claim of malicious prosecution under Illinois law, a plaintiff must plead: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages. *See Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996) (citations omitted); *see also Kim v. City of Chi.*, 858 N.E.2d 569, 574 (Ill. App. Ct. 2006). Although Illinois has not established whether a prison disciplinary proceeding would constitute a "judicial proceeding," this district has indicated that this type of proceeding would not support a claim for malicious prosecution. *See Lee v. Gowdy*, No. 12 CV 9503, 2012 WL 6605400, at *2 (N.D. Ill. 2012) (collecting

---

[1] Other circuits allow claims of malicious prosecution to rest on the Fourth Amendment. *See Townsend v. Wilson*, No. 15-2894, __Fed. Appx.__, 2016 WL 3262630, at *3 n.1 (7th Cir. June 14, 2016) (citing *Julian v. Hanna*, 732 F.3d 842, 846 (7th Cir. 2013) (citing cases)). The Seventh Circuit has rejected this approach, but the Supreme Court has granted certiorari to address this question. *See Manuel v. City of Joliet*, 590 Fed. Appx. 641 (7th Cir. 2015), *cert. granted* 136 S. Ct. 890 (Jan. 15, 2016). The court need not await the outcome of *Manuel* here because unlike the plaintiff in *Manuel*, Joseph can proceed with his federal malicious prosecution claim because he has no adequate remedy under state law. *See id.,* 590 Fed. Appx. at 642. Furthermore, the elements of a federal malicious prosecution claim are the same whether the claim is based on the Fourth Amendment or on the due process clause of the Fourteenth Amendment. *Julian*, 732 F.3d at 846 (7th Cir. 2013).

cases). Moreover, the subject disciplinary process did not ultimately favor Joseph. Because the failure to establish any one element of a state-law malicious prosecution claim bars recovery, *see Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016) (citation omitted), Joseph is entitled in principle to pursue his claim here under Section 1983, *see Howlett*, 794 F.3d 721.

The crux of Joseph's malicious prosecution[2] claim appears to be that Ortiz "lied about the situation" when he made his disciplinary report, presumably referring to Joseph's contention that he violated no rules relating to head attire and that he did not disobey any orders. (See R. 46, Pl.'s Resp. ¶¶ 29-31.) In a Section 1983 malicious prosecution suit, the plaintiff must allege a violation of a particular constitutional right, such as due process, *see Welton v. Anderson*, 770 F.3d 670, 673 (7th Cir. 2014) (citation omitted), and that he suffered a liberty deprivation as a result, *see Julian*, 732 F.3d at 846-47. The court is inclined to find that to the extent Joseph is asserting a malicious prosecution claim, the claim falls short. Even assuming that Ortiz violated Joseph's due process rights by falsely accusing him of breaking head-attire rules, Joseph was also detained and ultimately only punished for disobeying orders to return to his bunk, not for wearing head attire in the dayroom. (R. 40-2, Pl.'s Dep., Ex. 1.) Indeed, Ortiz's witness statement made no

---

[2] The Seventh Circuit has cautioned that "there is nothing but confusion gained" by labeling a legal theory brought under any constitutional amendment as "malicious prosecution." *See Manuel*, 590 Fed. Appx. at 643 (citation and internal quotations omitted). But because Joseph alleges a separate due process claim based on the adequacy of the hearing board procedures, for purposes of this motion the court refers to his Section 1983 claim based on Ortiz's alleged false statements as a "malicious prosecution" claim.

mention of Joseph's head attire. (See R. 46, Pl.'s Resp., Ex. I.) And although Joseph claims he was "arrested for no reason," he does not dispute that he refused to sit down when ordered to do so because he felt uncomfortable sitting on another detainee's bed. (See R. 46, Pl.'s Resp. ¶ 14; R. 40-2, Pl.'s Dep. at 14:18-24.) Therefore, even if Ortiz did in fact lie about Joseph violating the head-attire rules, in the end Joseph was only found guilty and disciplined for disobeying an order to sit down—and Joseph does not deny that he refused to follow that order. Accordingly, there is no evidence indicating that any liberty deprivation Joseph suffered resulted from any alleged fabrication.

Furthermore, as already discussed above, Joseph's evidence does not show that he did not receive adequate process. The Seventh Circuit has held that "even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." *Lagerstrom*, 463 F.3d at 625 (citations and quotations omitted). Indeed, the Court has found that "an allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted" where the required procedural due process protections are provided. *See id.* (citing *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984)) (quotations omitted). At the end of the day, there are too many flaws in any potential malicious prosecution claim Joseph may have against Ortiz for such a claim to succeed.

However, because Ortiz's motion did not address Joseph's malicious prosecution claim, Rule 56(f) of the Federal Rules of Civil Procedure provides that

this court must give "notice and a reasonable time to respond" before it grants summary judgment on grounds not raised by a party. Fed. R. Civ. P. 56(f). More specifically, the court must give the party against whom summary judgment may be entered both notice of this possibility and an opportunity to respond, including the opportunity to "marshal evidence and argument in opposition to summary judgment[.]" *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015); *see also Lalowski v. City of Des Plaines*, 789 F.3d 784, 794 (7th Cir. 2015) ("Because no party moved for it, the district court could grant summary judgment on Lalowski's administrative review claim only [a]fter giving notice and a reasonable time to respond.").

## Conclusion

For the foregoing reasons, Ortiz's motion for summary judgment on Joseph's due process claim is granted. The court also gives notice to Joseph that it intends to grant summary judgment for Ortiz to the extent Joseph may be asserting a malicious prosecution claim in this action. If Joseph has some basis to preclude entry of summary judgment against him on his malicious prosecution claim, he must file an objection explaining his opposition and any supporting information by no later than September 13, 2016.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**

18